## STATE *v.* J. P. DONOVAN.

### January Term, 1903.

Present: TYLER, MUNSON, START, STAFFORD and HASELTON, JJ.

Opinion filed June 4, 1903.

*Forgery—Indictment—Variance—Amendment—Evidence —Exhibiting note to jury—Discretion of trial Court.*

Material and immaterial variances between the proof and an indictment for forgery, considered.

It is within the discretion of the trial Court, even after the evidence is closed, to permit the State's Attorney to amend an indictment for forgery so as to set out the instrument correctly, and to refuse a postponement of the trial is not error.

A memorandum on the back or margin of a note, made at the time of its execution, forms a part of it, and is the subject of forgery.

On the question whether a note, payable in 4½ inch clapboards, had been so changed as to require payment in 5½ inch boards, evidence

that a note, subsequently given to settle a controversy over the quantity delivered, was payable in boards of the latter width, was inadmissible, in the absence of evidence that the payee especially wished boards of that width.

It was not error for the Court to refuse to order the State's Attorney to deliver certain letters to respondent's counsel during his cross-examination of the State's witness, since the letters were afterwards produced and the respondent had full benefit of them.

The time when written evidence may be exhibited to the jury is within the discretion of the Court.

It is not error to exclude a question asked by the respondent of his witness, which does not meet any testimony given by the State,— especially when such witness' subsequent testimony fairly covers the point of the inquiry.

Nor is a cross-examination improperly restricted, when the witness' testimony fairly covers the subject matter of the proposed question.

On the question whether a note, payable in lumber of a certain width, had been so changed as to require payment in lumber of another width, the value of the lumber actually delivered under the contract is material.

On this question, evidence as to the usual price of the article for which such note was given, is admissible.

INDICTMENT FOR FORGERY. Trial by jury on a plea of not guilty, at the March Term, 1901, Washington County, *Watson,* J., presiding, after respondent's demurrer to the indictment had been overruled, and his exception thereto had been ordered to lie without prejudice. Verdict, guilty. Judgment thereon, and sentence deferred. The respondent excepted.

*John W. Gordon* and *Truman R. Gordon* for the respondent.

The respondent excepted to the admission of the note in question, and pointed out various variances between it and the instrument set forth in the indictment. When an indictment professes to set out a written instrument by its tenor, the proof

must conform thereto with almost the minutest precision.  I Bish. Crim. Pro. ss. 488, 561, 562; *Griffin* v. *State*, 14 Ohio, 55; 1 Chit. Crim. L., 235; *Reg.* v. *Drake*, Holt, 95, and many other cases.

The memorandum on the margin of the note is not the subject of forgery.  *Henry* v. *Cole*, 5 Vt. 402; *Fletcher* v. *Blodgett*, 16 Vt. 26; *Roberts* v. *Smith*, 58 Vt. 492; *Benedict* v. *Cowden*, 49 N. Y. 396.

The Court could not allow an amendment of the indictment in the essential particulars complained of.  *State* v. *Briggs*, 34 Vt. 501; *Commonwealth* v. *Bigelow*, 8 Met. 835; Hughes' Crim. L. & Pro., 964; 3 Greenl. Ev., 107; *Gilchrist's Case*, 2 Leach, 660.

The refusal of the Court to order the State's Attorney to produce the letters written by the respondent was prejudicial.

The respondent should have been allowed to show the value of the clapboards actually delivered.  That the witness furnished clapboards whose value would not make the price of the organ as specified in the agreement, was a material fact.

The Court should have permitted the respondent to exhibit the note to the jury in connection with the testimony of Will Parsons.

A verdict of acquittal should have been ordered.  There was no proof that the respondent made the change alleged, except the fact that he had the note in his possession.  This was not sufficient to warrant a conviction.  Underhill on Cr. Ev., s. 426; *Miller* v. *State*, 51 Ind. 405; *Fox* v. *People*, 95 Ill. 71; *Reg.* v. *Geach*, 9 C. & P. 499; *Rex* v. *Shukard*, R. & R. 200.

The respondent should have been allowed to ask Will Parsons if he saw Donovan hand the note to Mr. Parsons.  It was to meet the testimony of witnesses of the State, and it was error to exclude it.  *Norton* v. *Parsons*, 67 Vt. 526.

The fact that the thirty dollar note was payable in 5½ inch boards was material.  It bore upon the probability as to what the original contract was in this particular.

The usual price of the organ was material.  The State was allowed to show the value of 5½ inch clapboards, and the evidence offered as the value of the organ should have been received.

The Court should have charged that the presumption of innocence may, in itself, create a reasonable doubt of guilt. *Coffin* v. *United States,* 156 U. S. 432; *Cochran* v. *United States,* 157 U. S. 286.

*Richard A. Hoar,* State's Attorney, for the State.

The note and the writing on the back of the same is within the statute.  *State* v. *Shelters,* 51 Vt. 102; *State* v. *Briggs,* 34 Vt. 501; *State* v. *Nevins,* 23 Vt. 592.

The variances were immaterial.  *People* v. *Warner,* 5 Wend. 271; *Marion* v. *Foxon,* 20 Conn. 486; *Morton* v. *Tenny,* 16 Ill. 494; *Banks* v. *Goss,* 31 Vt. 315; *Harris* v. *People,* 64 N. Y. 148; *State* v. *Arnold,* 50 Vt. 731.

The amendments were properly allowed.  *State* v. *Cassavant,* 64 Vt. 405; *Atkins' Est.* v. *Atkins' Est.,* 69 Vt. 270; *Swerdferger* v. *Hopkins,* 67 Vt. 136.

It was not error for the Court to refuse to produce the letters, referred to by the witness without inquiry by the State's Attorney.  *Cutler & Martin v. Skeels,* 59 Vt. 154.

It was not error to exclude the testimony relative to the value of the boards delivered.  The only question was as to the market value of boards of different widths.

It was proper to exclude the terms of payment of the thirty dollar note.  This note was given nearly two years after the original was given, and had no bearing on the ques-

tion at issue. For the same reason, the evidence as to the usual price of the organ was properly excluded.

TYLER, J. This is a prosecution for forgery. The indictment charges that the respondent had in his possession October 22, 1897, a certain promissory note, for the sum of one hundred dollars, payable to himself or bearer, on demand, with interest, "which note then and there was of the tenor following:

. 'No salesman is authorized to make any promise or agreement at variance with terms of the following note and agreement.

J. P. Donovan,
dealer in Pianos,
Organs, Sewing    } $100.00
Machines, Etc.,
Montpelier, Vt.            Montpelier, Vt., Oct. 22, 1897.

On demand, I promise to pay J. P. Donovan, or bearer, one hundred dollars at the First National Bank, Montpelier, Vt., with interest, value received for one Packard organ, style chapel, 441, No. 55257, to remain the property of J. P. Donovan, or bearer, until the note is paid in full.

Conditions are to pay $.. .,. .,. .,. ., on the ... .,. ........ day of ... .,. .,. .,. ..., and $. .,. .,. .,. . on the.. .,. .,. ..., .,. .day of each month thereafter until the note is paid in full.

Alonzo A. Parsons.
Witness.

No specified time for goods to be delivered.
Union Card Co., Printers, Montpelier, Vt."

And on the back of said note there was then and there written the following words and figures:

'N 2-134    *Alonzo A. Parsons, Warren, Vt.*    1279-N.

I will deliver to Montpelier, Vt., 20 thousand ft. of 4½ in. cottage clap-boards, in payment of this note by Dec. 30, 1897.

(Signed) Alonzo A. Parsons.
Accepted the above offer, J. P. Donovan.' "

The indictment further charges that afterwards, on the same day, the respondent, " * * * , with force and arms, wittingly,* * * , and feloniously, did alter the said promissory note, and the writing on the back of said promissory note as aforesaid, by then and there wittingly, * * * , and feloniously making, forging, and changing the figures 4½ then and there written on the back of said promissory note by the said J. P. Donovan to the figures five and one-half, and the said figures four and one-half so being on the back of said promissory note were so changed and written, and were falsely made, forged and added as aforesaid, did become, import and signify five and one-half, which altered promissory note, and the said writing on the back of said note, which was then and there a material part of said note, is now in the words and figures as altered as aforesaid, are, 'I will deliver to Montpelier, Vt., 20 thousand ft. of 5½ in. cottage clapboards in payment of this note by Dec. 30, 1897, Alonzo A. Parsons.' Accepted the above order, J. P. Donovan. With the intent," Etc.

To the indictment the respondent filed a general demurrer and assigned several causes. The demurrer was overruled by the trial Court, and the respondent excepted. The questions raised on the demurrer, on exceptions to the rulings during the trial, and to the charge of the Court, are presented in the respondent's brief.

It appeared that the respondent sold to Alonzo A. Parsons a Packard organ, and received from him a certain writing. The State claimed that the respondent changed the figure "4" to the figure "5," after he received the paper, so as to require payment in 5½ inch, instead of 4½ inch, boards; the former being of more value than the latter. The alleged change of "4" to "5" was the forgery charged.

When the paper was offered in evidence, the respondent objected to it on the ground that there were several variances between it and the paper set out in the indictment.   The principal variances alleged are:

1.   The two lines at the head of the paper contain the words "promises" and "agreements," whereas, the indictment, before its amendment, used those words in the singular number.

2.   The words on the right hand side of the paper: "A contract once completed cannot be amended," are omitted in the indictment.

3.   The indictment omits the word "to" before "Donovan" in the clause, "On demand I promise to pay J. P. Donovan," etc.

4.   The writing contains upon its face the words "Until 'this' note is paid in full."   The indictment uses the word "the" instead of "this."

5.   The respondent claims that the characters and figures on the back of the paper are "N. L. 134," whereas the indictment recites them as "N. 2-134."

6.   In the indictment the word "signed," before the signature of Alonzo A. Parsons, is set forth, while the original paper shows that the word had been crossed off and was not a part of the paper.

7.   On the back of the paper, after the "5 1-2" are the letters "inh," which the indictment sets out as "in."

8.   The indictment charges that the respondent changed the figures "4 1-2" to "five and one-half," thus describing the change in words instead of figures.

9.   In the acceptance on the back of the paper, the word is "offer," which the indictment recites as "order."

10.   The agreement on the back of the paper is dated

"Dec. 30, '97," which is recited in the indictment as "Dec. 30, 1897."

The trial Court held all the variances immaterial, over-ruled the objections to the paper, and admitted it in evidence, to which the respondent excepted.

The respondent relies upon the rule laid down in 1 Bish. Cr. Pro. § 488: "If the indictment professes to set out a writing by its tenor, whether in the particular case this exactness of averment is necessary or not, the proof must conform thereto with almost the minutest precision."

Some of these variances are immaterial under the strict rule above cited; for instance, the lines at the head of the writing contain an instruction to the respondent's salesmen, and the words "any promise or agreement," necessarily mean the same as "any promises or agreements." These lines and the words, "A contract once completed cannot be amended," are only important as descriptive of and identifying the paper. The omission in the indictment of the word "to" before the respondent's name, the use of "2" for "L," and "in" for "inh" on the back of the paper, are immaterial. Under the rule in Bishop, the use of the words "five and one-half" and "four and one-half," was a material variance, for there was in fact no change of words; the change, if made, being of the figure "4" to the figure "5." The same is true in the substitution of "order" for "offer," for there was no "order" of Parsons to accept boards for the one hundred dollars.

But it is unnecessary to discuss these variances *seriatim,* for, by virtue of V. S. 1912, it was within the discretion of the trial Court to permit the State's Attorney to amend the indictment and set out the instrument accurately, although this was done after the testimony was closed. It is inconceivable that the respondent could have been prejudiced thereby in his de-

fense upon the merits. It did not vary the proof necessary to be made either by the State or the respondent. It was within the exercise of a reasonable discretion by that Court, in view of the character of the amendments, to refuse a postponement of the trial. V. S. 1912.

But the respondent contends that the indictment as amended did not describe an instrument that is the subject of forgery, under V. S. 4977, and excepted to the admission in evidence of the paper described.

The instrument was upon its face a promissory note for one hundred dollars, given by Parsons to the respondent for an organ, and payable on demand. The writing on the back was made at the same time, was a part of the note, and is to be treated as if it had been inserted in the body of the note for the purpose of fixing the time and manner of payment of the one hundred dollars. It was long since decided in this State that a memorandum upon the back or margin of a note, made at the time of its execution, forms a part of it, although it contains an important qualification of the contract. *Henry* v. *Colman*, 5 Vt. 402; *Fletcher* v. *Blodget*, 16 Vt. 26, 42 Am. Dec. 487; *Denison* v. *Tyson*, 17 Vt. 549; *Reed* v. *Sturtevant*, 40 Vt. 521.

*Roberts* v. *Smith*, 58 Vt. 492, 4 Atl. 709, 56 Am. Rep. 567, is not in point, for there the promise was to pay J. S. King, or bearer, one ounce of gold, which was held to be a simple contract. It was not in form a promissory note, and, as the Court said, it was not even a promise to pay a given sum in specific articles. Where the contract is to deliver specific articles, it is not a promissory note; but, where the contract is to pay a specified sum in specific articles, it is a promissory note. Rob. Dig. 92, pl. 13, 14, 15.

The respondent claimed a shortage in the amount of lumber received, and wrote Parsons two letters upon the subject; one, making a claim of shortage, and the other demanding damages therefor. A suit followed, which was settled by Parsons giving the respondent a note for thirty dollars. The respondent offered to show that this note was payable in 5½ inch clapboards, as tending to show that the original note was payable in that width, which offer was properly excluded as immaterial. In the absence of evidence that Donovan especially wished for that width, the evidence had no tendency to establish the fact claimed.

There was no error in the Court's refusal to order the State's Attorney to deliver these letters to the respondent's counsel during his cross-examination of Parsons. Without now considering what the general right of a respondent may be as to having papers delivered to him for the purpose of cross-examination, in this case the letters were afterwards produced by the State, and the respondent had the full benefit of them, though they do not seem to have had any weight as evidence.

The respondent had ample opportunity to show the note to the jury while the evidence was being introduced and during the arguments, and he was not harmed by the Court's refusal to allow him to exhibit it to them during the examination of a particular witness. When it should be shown to the jury was a matter in the discretion of the Court.

The direct question put by the respondent to his witness Dearborn: "Did you see Mr. Donovan hand this 'Exhibit A' to Mr. Parsons while you were there?" was properly excluded. It was not asked to meet any testimony given by Parsons. The State's evidence tended to show that Dearborn was where he could not have seen the transaction inquired about. Besides,

after this exception was taken, Dearborn testified fully and without objection in whose hands he saw the paper,—that it was in no one's hands but Donovan's, and Alonzo Parsons', while he was signing it. Dearborn also testified that he did not see Donovan do anything with the note but hold it in his hand.

The respondent was not restricted in his cross-examination of Parsons upon the question whether the latter did not guarantee that the lumber to be delivered was worth five dollars a thousand, for he had repeatedly answered that there was *no* conversation about the price.

The trial Court gave the respondent full opportunity to make proof relative to the respective values of the two widths of boards, and no restriction was placed upon his cross-examination of Parsons upon this point. The witness had repeatedly answered that there was no conversation about the prices of the two grades; that their conversation related solely to the number of thousand feet of 4½ inch lumber that the witness would give and the respondent receive for the organ.

Parsons was an important witness for the State; he had testified about the transaction between himself and the respondent, and that the 4½ inch boards were the only ones mentioned. The respondent testified that 5½ inch boards were agreed upon. The Court correctly said that the real question was which width was offered and accepted, and, bearing upon the probability of one or the other party being in the right, held it competent to show the respective prices or values. Parsons testified upon this subject, and we think it was proper cross-examination to show by him that the lumber that he delivered to the respondent under the agreement was only of the value of three dollars per thousand at the place of delivery. In the exclusion of this line of inquiry there was error, for it grew out of Par-

sons' direct testimony, and it bore directly upon the probability of the respondent having agreed to accept lumber of this value. There being no evidence tending to show a different value, it was reasonable to presume that the lumber shipped by Parsons was of the average quality and value of that width of boards. The exclusion of the offer of evidence in defense to show that the boards delivered at Montpelier were worth only three dollars per thousand feet was error. The value of the boards delivered tended to establish the value of all boards of that width that the parties considered. Parsons had testified that the value of the wider boards was one dollar and a half to two dollars per thousand more than the others.

The respondent testified that several grades of boards were discussed during the negotiations; that he was indifferent as to which grade he should receive, but that he demanded twenty-five thousand feet of the 4½ inch, while Parsons would offer only twenty thousand feet. Parsons testified that no grade was mentioned, other than the 4½ inch and that prices and values were not spoken of. So it was a vital question which width was agreed upon. If 5½ inch, those figures should appear in the offer.

For the same reason that it was competent, as the Court held, to show the values of the two kinds of boards, it was competent to show the usual price of this kind of organ, although the price was agreed upon. If the usual price had been considerably more than one hundred dollars, it was less likely that Donovan would have sold this one for a quantity of lumber worth only from sixty to eighty dollars, than that he would have sold it for the same quantity, the market value of which was one hundred dollars.

The rule respecting the admissibility of evidence in such cases is well stated in *Kimball* v. *Locke*, 31 Vt. at p. 686, * * *

"On the question whether a person did a particular thing or not, the character of the subject matter, and the circumstances affecting the relation of the parties to that subject matter, affect the probability of the thing in question having been done as claimed." It was error to exclude the evidence tending to show that the usual price of that kind of organ was from $110 to $115. It was just as competent to show the usual price of the organ, as bearing upon the probability of a certain act having been done, as it was to show the prices of the two grades of lumber, as bearing upon that probability.

No other exceptions to the rulings are sustained. There was no error in the charge.

*Judgment reversed, verdict set aside, and new trial granted.*

