## B. J. LANG v. GEORGE L. CLARK.

Present:  ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 18, 1911.

*Witnesses—Disqualification—Surviving Party to a Contract in Issue—P. S. 1589—Cross-Examination—Materiality—Adverse Possession—Claim of Title—Deed—Evidence—Materiality—Order of Reception—Ejectment—Description—Direction of Verdict—Instructions—Prejudice—Application to Evidence—Abstract Request to Charge—Exceptions—Suffici-ency—Waived by Failure to Brief.*

In an action of ejectment, P. S. 1589, disqualifying as a witness one party to a contract in issue and on trial where the other party is dead, does not disqualify the grantor of plaintiff's deceased grantor to testify that the witness conveyed the land in controversy to plaintiff's grantor by a deed claimed to have been lost and never recorded, especially where the lost deed is used only in aid of plaintiff's claim of adverse possession and not as a link in his chain of title.

A deed may aid a claim of title by adverse possession, though no title is shown in the grantor therein.

In an action of ejectment, where plaintiff relied on title by adverse posses-sion, and the grantor of plaintiff's grantor on cross-examination testi-fied that he had not been a party to any suit against defendant re-lating to the land in controversy, it was not error to exclude the further question whether he had not been a party to a chancery suit against defendant involving that land, when plaintiff at once admitted that witness had been a party to such a suit.

In an action of ejectment, where plaintiff relied on title by adverse posses-sion, and his witness on cross-examination had testified that, after he had conveyed the land in question to plaintiff's grantor, witness claimed no interest therein, and "expected" that plaintiff was the owner thereof all the time until suit was brought, the court properly excluded as immaterial, the further question whether witness ever declared on oath that to his best knowledge and belief another was the owner of the land.

In an action of ejectment, defendant on cross-examination could not, as matter of right, inject a deed into the case as independent evidence, where the offer of the deed was neither direct nor cross-examination,

and especially where it was offered as tending to show, among other things, title in defendant, and it had no such tendency.

In an action of ejectment to recover "lot 71" of the second division of lands in the town of Brighton, where defendant introduced evidence that his grantor had paid taxes on "lot 71," and defendant had testified as to the quality of "lot 71," as to what he had done on it, that he had a map of it, told about the line that joins it to lot 70, and further testified that he had been a lister in the town of Brighton and recalled to whom "lot 71" had been set in the list for taxation, and that in 1890 he discovered that there was a break in the title to the lot, that he was familiar with the lots and ranges in that town, and that there was a "lot 71" in the second division, his motion for a directed verdict on the ground that there was no evidence that the town was ever alloted or divided, so that a description of land as "lot 71" in the second division of lands in that town described nothing, was properly denied.

Since in ejectment plaintiff can recover "according. to his right," where there was evidence tending to show title in plaintiff by adverse possession to at least a part of the land for which he sued, defendant was not entitled to a directed verdict for that plaintiff had no valid title to the whole lot.

In an action of ejectment, an instruction that, in order to recover, plaintiff must show a right to the premises superior to that of defendant, was not objectionable as implying, or leaving the jury to infer, that defendant must show some title.

In an action of ejectment, where defendant's evidence did not tend to prove title in him by adverse possession, he was not prejudiced by an instruction that, as the court understood the matter, defendant did not claim that he had proved title by adverse possession.

In an action of ejectment for land, an undivided half of which was conveyed to plaintiff by his father, since deceased, but there was no evidence that he died intestate and that plaintiff was his sole heir, it was error to submit to the jury whether plaintiff "or his ancestor" had made out title by adverse possession.

An exception to an instruction as given does not reserve the question whether there was error in failing to give another and further instruction.

An exception not briefed by the exceptor is treated as waived.

A requested instruction consisting of an abstract proposition of law, with nothing to indicate how the jury should apply it to the evidence, was properly refused.

In an action of ejectment for land, an undivided half of which had been conveyed to plaintiff by his father, where there was no claim or suggestion made during the trial that the rights of tenants in common were involved, defendant could not be heard to object to a certain instruction because it contained nothing with reference to the rights of tenants in common to maintain ejectment against each other.

In an action of ejectment for land, an undivided half of which was conveyed

to plaintiff by his father, plaintiff testified that he knew nothing of a deed of the land from a designated person to plaintiff's father until about the time the suit was started, and that he did not know, and never knew, just where the lines were "down there," apparently referring to a strip of land, parcel of the land in question, on which certain haying had been done. *Held*, that this evidence of plaintiff's ignorance would not warrant an instruction that when plaintiff cut the hay he had no knowledge of any writing giving the land in question to himself or his father, and defining its limits, and that, therefore, the jury must find that plaintiff was not occupying a part under a claim of the whole of a larger tract of definite limits, and could recover only what he actually occupied.

Actual possession of a part of a lot of land may give constructive possession of the whole, if it had boundaries sufficiently well marked, regardless of who marked them.

EJECTMENT.   Plea, the general issue.   Trial by jury at the April Term, 1909, Essex County, *Miles*, J., presiding. Verdict and judgment for the plaintiff.   The defendant excepted.   The opinion states the case.

*Herbert W. Blake* for the defendant.

*George L. Hunt, R. W. Simonds* and *J. Rolf Searles* for the plaintiff.

HASELTON, J.   This is an action of ejectment for "lot 71" of the second division of lands in the town of Brighton.   The case was tried by jury and the verdict was for the plaintiff for the possession of the lot and for damages and costs.   Judgment was rendered on the verdict and the defendant excepted.

At the outset the plaintiff claimed to be able to show a perfect record title, but on trial he abandoned this claim and relied upon title by adverse possession.

He introduced, without objection, a deed from his father to him executed April 27, 1893.   The description in this deed was of an undivided half of certain lands including the lot in question.   The plaintiff's counsel say here that upon reflection they take the view that the deed conveyed lot 71 in its entirety; but this was not their claim below; and the fair and natural construction of the deed is that above given it, the construction given it on trial by both parties and by the court.

The plaintiff introduced evidence tending to show that between 1875 and 1880, S. D. Hobson deeded the lot in question to the plaintiff's father and grantor, A. J. Lang, by a warranty deed which was never recorded and which was lost. The evidence of the giving of the lost deed came solely from Mr. Hobson, the grantor therein; and the grantee, the plaintiff's father, having died before the commencement of this suit, the defendant claimed that Hobson was disqualified from giving this testimony on the ground that he was the surviving party to the contract, or cause of action, in issue and on trial. P. S. 1589. But this statute did not disqualify the witness. In *Sowles* v. *Butler*, 71 Vt. 271, 44 Atl. 355, where the title to real estate was in question, it was expressly held that a grantor in the chain of title of one of the parties was not disqualified under the statute from testifying, although his grantee was dead. Still less was Hobson disqualified because the deed given by him to the plaintiff's father, who was dead, was used not as a link in a chain of title, but in aid of the plaintiff's claim of adverse possession.

The defendant had a further exception to all this testimony of Mr. Hobson about the giving of the lost deed on the ground that no title to the land had been shown in Mr. Hobson. But a deed may aid a claim of title by adverse possession although no title in the grantor therein is shown, and so this exception was not well taken. On cross-examination the defendant elicited from the witness, no objection being made, testimony to the effect that after he executed the deed he claimed no interest in the land, "expected" that Lang was the owner all the time until this suit was brought, never heard of any one else having any interest in the land until about the time this suit was started, when he heard of the defendant's claim to the land and that he himself was not a party to a suit against the defendant relating to this same land. He was then asked if he wasn't a party to a bill in chancery that was brought against the defendant. To this question objection was made and the reasons given were that it was asked to show the extent of the knowledge of the witness, and, in general, that if the witness had been made a party orator to a suit in chancery it was material whether he knew it or not. Defendant's counsel stated that they expected to make use of this chancery suit in their defence.

Plaintiff's counsel then stated that a suit in chancery was brought and that the witness was made a party. By the statement of the plaintiff's counsel, and not previously, it appeared that the chancery suit talked about related to the land in question. After some discussion the court excluded the question. The witness had already testified that he was not a party to any suit against the defendant relating to this land, and as it had appeared from an admission made in open court that this was not so, the defendant did not need to repeat, in substance, a question already put and answered. *State* v. *Donovan,* 75 Vt. 308, 318, 55 Atl. 611. If the plaintiff had sought to relieve his witness from the position in which his testimony had placed him a different question would have been presented. The bill in chancery is in no way made a part of the bill of exceptions. We find no error in the action of the court in respect to this cross-examination.

The witness Hobson was in further cross-examination shown a paper bearing a signature which he identified as his. He was then asked if he claimed an interest in the land at the time he signed the paper. There was no evidence as to what the paper was, or when it was signed. The question was objected to and excluded. To its exclusion no exception was taken. The witness was then asked: "Did you ever declare upon oath that Mr. C. T. Fitzgerald was to your best knowledge and belief the owner of the land?" The witness was not permitted to answer this question and the defendant excepted.

The testimony theretofore given by the witness as to what he "expected" about the ownership of the land after he gave his deed to Lang was brought out on cross-examination, and, except so far as it was a disclaimer of title and interest in himself thereafter, was of no sort of consequence, and the question which the court was asked to rule on was a prolongation of an immaterial line of inquiry. It was proper for the court to exclude the question.

The plaintiff as a part of his opening case called the defendant as a witness and showed by him that he had cut over the lot in question, and had a lumber camp on it, and that he had at all times from 1903 or 1904 down to the time of trial claimed to own the lot in question. This evidence as to claim

was obviously for the purpose of showing, as a part of the plaintiff's case in ejectment, that the acts of the defendant on the land were possessory. Thereupon the defendant, under examination by his own counsel, testified that he had purchased lot 71 from Charles Fitzgerald, and he then offered in evidence a quit-claim deed of the lot from Charles Fitzgerald to himself dated January 22, 1903. This deed was received in evidence as tending to show what the defendant claimed. The defendant then further testified to the payment of taxes on sixty-six or sixty-seven acres of the lot from 1903 down to the time of trial, and that in one or two years during that period he had paid taxes on seventy six acres, the whole acreage of the lot. The defendant then offered a land contract dated April 20, 1862, by which one Woodbury agreed to convey the lot in question and other lots to one Pratt when the latter should have paid therefor certain sums of money. Nothing else was offered in connection with this deed and it was excluded. Its exclusion was proper as there was nothing about it, or the offer of it to suggest its relevancy. The defendant then offered a quit-claim deed of the lot from Pratt to himself dated October 15, 1908, which was somtime after the suit was brought but before the trial. This was offered "to explain defendant's examination by the plaintiff in which he had testified that he had claimed title to the land ever since he got the deed from Fitzgerald and claimed title to the land at the time of the trial, and also as tending to show title, claim of title, and color of title in the defendant, the limits of the defendant's claim, and the nature of his claim."

The deed was excluded as not being proper cross-examination and as being inadmissible under the offer. The offer of this deed was in no sense either direct examination or cross-examination of the witness; but the deed was offered as independent evidence, and as such the defendant could not, as matter of right, inject it into the case before the plaintiff rested. Besides it was properly excluded under the offer for it did not tend to show title, and so in any view the offer was too broad.

At the close of all the evidence the defendant moved, on various grounds, for the direction of a verdict in his favor. One ground of the motion was based on the claim that there was

nothing in the evidence tending to show that the town of Brighton was ever allotted or divided, and that so a description of land as lot 71 in the second division of lands in that town described nothing.

The defendant had introduced evidence on his part that one C. T. Fitzgerald had paid taxes on "lot 71" and he had called a witness, one Parsons, and had had him testify to familiarity with the lot, its location and character, and the kinds of timber growing on it. And, in fact, the defendant himself had taken the stand and testified as to lot 71, what kind of a lot it was, told about what he had done on it, said he had a map of it, told about the line that joins it to lot 70, and what proportion of the timber on lot 71 he had cut and removed.

The defendant had further testified that he has been lister of the town of Brighton, and he recalled to whom lot 71 had been set in the list, that in 1890 he had discovered that there was a break in the title to lot 71. He had testified that the second division lots in Brighton were supposed to be seventy-six acres each. He had testified that he was familiar with the lots and ranges in the town of Brighton, and that there was a lot 71 in the second division. In fact the defendant introduced a sketch showing a diagram of the lot and various things about it. On the defendant's own testimony "lot 71" was a good description of a definite tract of land, as good a description as "Blackacre" would be of a tract known and called "Blackacre." The motion could not prevail on the ground named.

The other grounds of the motion for a verdict in favor of the defendant related to the title of the plaintiff to lot 71. But the motion could not be granted on any of these grounds, for, without reference to the title to the whole lot, there was evidence to be submitted to the jury tending to show title in the plaintiff by actual adverse possession to ten acres or so of the lot; and in ejectment a plaintiff is entitled to recover "according to his right," and, if the evidence warrants, he may recover possession of a part of the land sued for, though he may fail as to the whole. The defendant recognized this doctrine and the evidence to which it might apply in what he denominated the third ground of his motion for a verdict, for that was a claim that if the plaintiff had been in adverse, continuous, notorious possession of land

in question for fifteen years before the commencement of the suit he had only been in possession of a narrow strip near the river, that he had cut hay stack bottoms off from, and had not been in possession of the whole, and that claim closed with a request not that a verdict be directed for the defendant, but that the court direct the jury that the plaintiff could recover only the narrow strip indicated.

There were some exceptions to the charge. The first was to an instruction by the court that the plaintiff in order to recover must show a right to the premises superior to that of the defendant. It is now claimed that this instruction was erroneous because it implied, or left the jury to infer, that the defendant must show some title. But neither the passage excepted to nor the charge as a whole is capable of the construction which the defendant fears may have been put upon it.

The defendant also excepted because the court said to the jury that he thought there was no evidence in the case tending to show that the defendant had title by adverse possession. In making this statement, however, the court was correct as the transcript shows.

The defendant excepted, likewise, to the statement of the court to the jury that, as the court understood the matter, the defendant did not claim that he had made out title by adverse possession. The defendant's counsel now makes the contention that: "Though the court might have been right in holding that the defendant's evidence did not tend to prove title by adverse possession, it was wrong to charge that he made no claim of title by adverse possession, as it may have raised an unfavorable presumption in the minds of the jury against the defendant." But we do not think that the defendant was prejudiced because the court did not tell the jury that the defendant had been making an unfounded claim.

The defendant also excepted to the charge of the court: "That the plaintiff claimed that he had taken possession under the deed, under color of title, from Mr. Hobson and laid claim to the entire lot."

This exception seems to relate to the claim of the plaintiff asserted at the trial, and we gather that it was a correct statement of the claim so asserted, and was preliminary to a statement

of what would be necessary to sustain the claim. There was no ground for the exception.

The defendant excepted to the charge of the court "in submitting to the jury the question whether the plaintiff or his ancestor had made out the kind of adverse possession required." This exception was taken on the ground "that there was no evidence in the case tending to show that the plaintiff was the heir of Andrew J. Lang, that Andrew J. Lang died intestate,. or that B. J. Lang was his heir, or only heir, or only son."

We have examined the charge to see if it could be fairly considered that in referring to the plaintiff's ancestor the court meant, and was understood to mean, to refer simply to the plaintiff's father as the grantor in the deed of 1893 purporting to convey to the plaintiff an undivided half interest in the lot in question, and we think it probable that the court was not so understood and did not intend to be so understood. In the discussion of the defendant's motion for a verdict made at the close of the plaintiff's evidence, the plaintiff's counsel, after referring to the deed from the father to the son of an undivided half interest, based a further claim of the plaintiff upon alleged testimony that the father died intestate, and that the plaintiff was his sole heir. The court had no recollection of such testimony, and the defendant's counsel then denied having heard any such testimony, but the plaintiff's counsel was positive about it, and, after again referring to the deed of 1893 of an undivided half, and being reminded by the court that that was a deed of an undivided half, counsel asserted that the plaintiff had the whole because he was the sole heir of his father who died intestate. The court said to counsel: "if that evidence isn't in why you are liable to get a reversal." One of the plaintiff's counsel thereupon said that he had no doubt at all about it, and the other of plaintiff's counsel said: "We are willing to take the chance." In disposing of the motion the court stated that it acted upon the assurance of counsel for the plaintiff that. the evidence was as they claimed it to be. At the close of all the evidence the motion was renewed, and nothing was then said to indicate that the plaintiff had in any way changed his claim as to how the evidence stood, nor that the court had ceased to rely upon the assurances of the plaintiff's counsel in that.

regard. But there was, in fact, no evidence that the plaintiff's father died intestate and that the plaintiff was his sole heir, and the matter stood as the defendant's counsel now claim, and as they claimed before the court at the time of taking the exception now under consideration. The plaintiff's counsel evidently thought that they had introduced evidence which they had failed to offer, and the court misled by their assurances erroneously charged as to the bearing of possession by the plaintiff's ancestor upon the right and title of the plaintiff.

The court charged the jury that if the father had acquired title to lot 71 by adverse possession before he gave the deed of 1893 to his son then that deed would be a conveyance of "the interest therein described" as complete as if the father's title had been by actual deed.

The defendant excepted to this portion of the charge claiming that it was erroneous because it contained nothing with regard to the rights of tenants in common to maintain ejectment against each other. But an exception to an instruction as given does not raise the question of whether or not there was error in failing to give some other, or further, instruction. *Lynds v. Plymouth*, 73 Vt. 216, 50 Atl. 1083; *Morrisette v. C. P. Ry. Co.*, 76 Vt. 267, 56 Atl. 1102.

During the trial there had been no claim or suggestion that the rights of tenants in common were involved in the case, and this is conceded, and for that reason the defendant cannot complain of a strict application of the rule above stated.

The defendant excepted to the failure of the court definitely to submit to the jury the question whether Hobson gave a deed of the fee of lot 71 to the plaintiff's father, and to the failure of the court to instruct the jury that if they failed to find that Hobson did give such deed then their verdict should be for the defendant. We do not find that this exception is referred to on the defendant's brief and we, therefore, treat it as waived. We do not say that that question should not have been submitted to the jury.

The remaining exceptions to the charge, set out in the bill of exceptions and relied on, raise no questions which have not been, in substance, already considered.

The defendant presented six written requests to charge.

With the first and last of these requests the court complied to the satisfaction of the defendant. To the failure of the court to comply with the other four the defendant excepted.

The defendant's second request was an abstract proposition of law, a single sentence taken from an opinion of this Court, without reference to the matter of the context, and with nothing to indicate how the jury were to apply it to the evidence in the case. It was not error for the court to decline to give it.

The defendant's third request related to the necessary elements of the adverse possession claimed by the plaintiff, and we think that, so far as it was applicable to the evidence, it was in substance complied with. It called for a charge upon the subject of abandonment after title has been gained by adverse possession, but we are referred to no evidence that would have made an instruction upon that point pertinent.

The defendant's fourth request was as follows: "It appears that plaintiff at the time he cut the hay upon the land had no knowledge of any writing giving the land in question to himself or his father and defining its limits, or of any definite, or noticeable marks, or monuments, indicating such limits. Therefore, you must find that the plaintiff was not occupying a part under a claim to the whole of a large tract of definite limits and that he can only recover what he actually occupied." It does appear from the plaintiff's own testimony that he knew nothing of the deed from Judge Hobson to his father until about the time this suit was started. As to the plaintiff's knowledge of marks, or monuments, the part of the transcript to which the defendant refers us shows that he admitted that he didn't know, and never knew, just where the lines are "down there," apparently referring to the narrow strip on which the haying was done. Unless there is evidence to which the defendant has not called our attention, the court would not have been justified in attributing to the plaintiff the degree of ignorance recited in this request, so we assume that the court was warranted in denying the request.

The defendant's fifth request, the last one not complied with, was this: "It does not appear that any definite and noticeable monuments, or marks, have ever been erected by the plaintiff, or any one through whom he claims. Therefore, you must

find that he can only recover to the limits of what is actually occupied." But actual possession of a part of a lot may give constructive possession of the whole lot if it has boundaries sufficiently well indicated by whomsoever those boundaries may have been erected or indicated upon the land. So the court would not have been warranted in complying with the request under consideration.

*Judgment reversed and cause remanded.*