FRED A. BARRELL *v.* ELLEN RENEHAN.

May Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1944.

24

*Loren R. Pierce* for the defendant.

*Alban J. Parker* for the plaintiff.

BUTTLES, J. The plaintiff and defendant in this chancery suit own and occupy adjoining parcels of land in the town of Hartford, the lands of the plaintiff lying northerly and westerly of the defendant's house lot. The plaintiff claims to own to a line about 218 feet northerly of the defendant's southern boundary, while the defendant claims to a line about 22 rods from her southern boundary. The prayer of the bill is for an injunction against interference with the plaintiff's alleged possession of the intervening land, for determination of the boundary between the premises of the parties, damages and general relief. The case was heard by the chancellor, findings were made and filed and decree rendered adjudging the plaintiff to be the sole owner of the disputed parcel,

granting the injunction as prayed and awarding nominal damages. The case is here on the defendant's exceptions.

At the close of the hearing before the chancellor the defendant moved to dismiss the complaint on the grounds that the suit being instituted primarily to try title to real estate the chancery court was without jurisdiction, and that the defendant had a constitutional right to a jury trial. To the denial of her motion the defendant has briefed an exception on the jurisdictional ground. Since an objection to jurisdiction of the subject matter is never out of time (*Miner's Ex'x.* v. *Shanasy,* 92 Vt 110, 112, 102 A 480; *Filmore's Admr* v. *Morgan's Estate,* 93 Vt 491, 493, 108 A 840), this exception is before us for consideration.

The defendant invokes the well recognized rule that the existence of a dispute as to the boundary between adjoining lands does not alone afford sufficient ground for a court of equity to ascertain and fix the boundary, and relies heavily upon *Aguirre* v. *Aja,* 113 Vt 123, 30 A2d 88. It should be noted, however, that the situation here is materially different from that in the Aguirre case. There any jurisdictional facts that may have been alleged in the bill were waived and the plaintiffs sought merely to have the location of a common driveway and the ownership of a parcel of land determined. In neither the cross bill nor the findings was there any reference to a threatened continuance of hostile acts by the plaintiffs or any other jurisdictional facts. In the present case the bill alleges repeated acts of trespass by the defendant and refusal to desist therefrom upon notice from the plaintiff. The commission of such acts by the defendant "on occasions" is found.

If the trespass is continuous in its nature, if repeated acts of wrong are done or threatened, although each of these acts taken by itself may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then also the entire wrong will be prevented or stopped by injunction on the ground of avoiding a repetition of similar actions. *Murphy* v. *Lincoln,* 63 Vt 278, 280, 22 A 418, quoting Pomeroy, Eq. Jur. Sec. 1357; *Griffith* v. *Hilliard,* 64 Vt 643, 644, 25 A 427; *Way* v. *Fellows,* 91 Vt 326, 330, 100 A 682; *Kennedy* v. *Robinson,* 104 Vt 374, 376, 160 A 170; *Kasuba* v. *Graves,* 109 Vt 191, 199, 194 A 455. There was no error in the denial of this motion.

The findings set forth numerous deeds and estate decrees of distribution in support of the title to the lands the parties respec-

tively own. The defendant's record title to the land in dispute goes back to a warranty deed from Samuel A. Gage and wife to Orsemus S. Hix, dated April 11, 1882, which contains the following description:

> "Beginning at a point on the highway leading from the old Lyman Toll Bridge so called to the village of Hartford one rod west of the west line of the land formerly deeded to me by Mary T. Williams, thence westerly along said highway four rods and three feet to an elm tree, thence northerly about twenty-two rods to land now occupied by Hazen N. Savage, thence easterly along the line of land so occupied by the said Savage, four rods and three feet, thence southerly in a straight line to the place of beginning. Containing about eight rods more than one half acre of land be the same more or less."

The defendant received a deed of this land from Joseph S. Bean on August 11, 1919. This deed also included a strip one rod wide on the westerly side of the above mentioned lot and extending back from the said highway 13 rods, which was conveyed by Samuel A. Gage to James G. Porter on May 26, 1886.

The plaintiff traces his title back to a warranty deed from Samuel A. Gage to Horace T. Sargent, dated October 11, 1887, in which the land above conveyed to Hix is expressly excepted. The plaintiff received his deed on February 29, 1924, from Hannah and Sumner H. Sargent. This deed contains a lengthy description of the boundaries of the land conveyed. It begins at the southwesterly corner of the defendant's land, and follows and proceeds westerly along Maple Street, which is the highway mentioned in defendant's title, then follows the lines of various land owners, then proceeds southerly "to a corner where said fence meets the line marking the northerly boundary of said Renehan's home lot . . which said northerly boundary was until recently marked by a fence; thence in a westerly direction along the last named boundary line to the corner where said line meets the westerly line of the said Renehan lot and which until recently was marked by a fence; thence southerly along said last named

boundary line to the point of beginning. It is estimated that the above described premises contain about ten (10) acres."

The defendant has resided in buildings on the southerly part of the land deeded to her by Joseph Bean since August 11, 1919. For a distance of 218 feet northerly of Maple Street the premises indicate that much care and attention have been given to them. At the rear of her buildings she has maintained a vegetable garden, a lawn and rock garden and an out-door fireplace for many years, but at no point more than 218 feet from Maple Street. Adjacent to and northerly of the rock garden there is a growth of brush and shrubs, including sumac bushes 8 to 10 feet high, which extends in a fairly straight line across the premises and generally parallel to Maple Street. On the land in dispute located more than 218 feet north of Maple Street there is nothing growing but brush, grass and weeds, and there are no structures located thereon. In 1924 there were remnants of an old fence running east and west just north of the rock garden, but no fence has been in existence since prior to 1919. Just prior to or just after the plaintiff delivered his deed to the defendant of March 29, 1924, hereinafter referred to, he exhibited to the defendant a plan of lots or sub-division of the land described in plaintiff's deed from the Sargents. The land in dispute appeared upon this plan as a part of the plaintiff's premises, and at that time the defendant made no claim or statement as to it. During the summer of 1924 the plaintiff drove stakes in the ground in dispute and on his adjacent land for the purpose of staking out a street, part of which would have been on the land in dispute. Shortly thereafter he had ditches made on the land in dispute and his adjacent land with a plow to correspond with the stakes. These ditches are now partially in existence. From 1924 to about 1934 he caused the grass on the land in dispute to be cut. During the summer of 1942 after this controversy arose he caused the grass to be again cut and removed. In 1930 and in 1931 he had plans including the land in dispute recorded in the land records of the town. Since 1919 the defendant has frequently gone upon the land in dispute for the purpose of crossing it to visit neighbors and a near-by cemetery, and has on occasions burned the grass and weeds thereon, but this has also been done by neighbors and the fire department. She has also on occasions piled lumber and wood on the southerly part thereof adjacent to her rock garden. On occasions her daughter has used the disputed land for

a playground, as have other children in the neighborhood. On occasions she has directed trucks carrying wood and coal to her house to cross this land, but there has at no time been any driveway or road on the land which has shown any travel.

On March 29, 1924, the defendant purchased of the plaintiff a piece of land described in the deed as follows:

> "Being a lot of land lying westerly of the present home premises of the grantee, on Maple Street in the Village of White River Junction in said Town of Hartford, beginning at the northwesterly corner of said grantees' present home premises thence southerly along westerly side of said premises a distance of two hundred and eighteen feet to the sidewalk on the north side of Maple Street; thence westerly along the northerly side of Maple Street fifty-five feet to a corner; thence northerly in line parallel with the westerly line of said grantee's home premises two hundred and eighteen feet to a point opposite the corner begun at and in line with the northerly line of said grantee's home lot extended westerly; thence easterly along said last described line fifty-five feet to the place of beginning. Being lots Nos. 1 and 3 of said Sargent lots to be recorded.

In the spring of 1941 the defendant talked with the plaintiff and stated that she wanted to buy from him some land back of her home place. The land talked about included the land in dispute. He replied that he did not want to sell because it broke up his plan for a street, but if he should change his mind he would give her the first chance to buy. In the spring of 1942, the defendant called the plaintiff to her home and stated that she owned the land in dispute. In 1942, after the plaintiff had cut and removed the grass, some of the disputed land was plowed up at the direction of the defendant. The plaintiff in the same year erected a "No Trespassing" sign, which the defendant tore down.

The findings do not indicate the basis for the decree in favor of the plaintiff. It is obvious that the defendant has record title to the land in dispute. In fact, the plaintiff in his brief relies only upon the claim of title by adverse possession.

■ Our rule for gaining title to land by adverse possession is that a possession that will work an ouster of the owner must be open, notorious, hostile and continuous for the full statutory period of 15 years. The tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest. *Scampini* v. *Rizzi,* 106 Vt 281, 286, 172 A 619; *Wells* v. *Austin,* 59 Vt 157, 165, 10 A 405. However, as said in *Webb* v. *Richardson,* 42 Vt 465, 473, "to constitute a continuous possession it is not necessary that the occupant should be actually upon the premises continually. The mere fact that time intervenes between successive acts of occupancy does not necessarily destroy the continuity of the possession. The kind and frequency of the acts of occupancy necessary to constitute a continuous possession depend somewhat on the condition of the property, and the uses to which it is adapted in reference to the circumstances and situation of the possessor, and partly on his intention. If, in the intermediate time between the different acts of occupancy, there is no existing intention to continue the possession, or to return to the enjoyment of the premises, the possession, if it has not ripened into a title, terminates, and can not afterwards be connected with a subsequent occupation so as to be made available toward gaining title; while such continual intention might, and generally would, preserve the possession unbroken. This principle is tersely stated in the civil law, thus: a man may retain possession by intention alone, yet this is not sufficient for the acquisition of possession." See also *Aldrich* v. *Griffith,* 66 Vt 390, 402, 29 A 376; *Chase* v. *Eddy,* 88 Vt 235, 238, 239, 92 A 99. Even the lapse of 15 years between the acts of possession will not amount to an abandonment as matter of law. *Patchin* v. *Stroud,* 28 Vt 394.

■ Our rule is, that this Court will assume in support of the decree that the chancellor inferred such facts from those certified up as he ought to have inferred or as he fairly might have inferred. *Labor* v. *Carpenter,* 102 Vt 418, 422, 148 A 867; *University of Vermont* v. *Wilber's Estate,* 105 Vt 147, 174, 163 A 572; *Fair Haven* v. *Stannard,* 111 Vt 49, 53, 10 A2d 214; *Albertson* v. *Bray Wood Heel Co.,* 113 Vt 184, 189, 32 A2d 125. Under this rule might the chancellor have fairly inferred that the plaintiff had acquired title to the land in dispute by adverse possession?

From the facts that the plaintiff in 1924 exhibited to the defendant a plan of lots which included the land in dispute; on March 29, 1924, deeded to the defendant a lot described as lots 1 and 3 on this plan with a north line 218 feet from Maple Street and described as an extension of the north line of the defendant's home premises; in the summer of that year staked out a street on the disputed land and plowed the ditches; cut and removed the grass for the next ten years; and recorded in the land records two plans including the land in dispute, a taking possession under a claim of ownership can be fairly inferred. The defendant claims that the aforesaid deed has no significance because the northwesterly corner of the defendant's home premises therein referred to means the northwesterly corner of the lot described in the deed from Samuel A. Gage to James G. Porter dated May 26, 1886. It is obvious from the description of the property conveyed by plaintiff's deed to the defendant that the starting point of that description, notwithstanding a discrepancy of three and one half feet in the distance from the highway as stated, was intended to be the northwesterly corner of the parcel conveyed by Gage to Porter. But the reference to this corner in the plaintiff's deed to the defendant as the "northwesterly corner of said grantee's present home premises" is not for that reason without significance, since the total width of the grantee's home premises was then five rods three feet, of which only one rod was the width of the addition to the original lot deeded by Gage to Porter in 1886. The deed from the plaintiff to the defendant also refers to the northerly line of defendant's home lot. The reasonable construction is that the northerly line of her entire lot is meant, since the two lots together were her home premises.

No possessory acts or claims on the part of the plaintiff are found after 1934 until 1941, when the defendant tried to buy of him some land which included the land in dispute, and the plaintiff refused to sell, but in view of the nature of the ground and the purpose for which it was purchased, together with the claim made in 1941 as above before controversy arose, it can fairly be inferred that the plaintiff never abandoned his claim of ownership.

Since the defendant had legal title of record to the land in dispute there is a presumption that her use of it as detailed in the findings was an exercise of her right to enjoy it. *D'Orazio* v. *Pashby,* 102 Vt 480, 486, 487, 150 A 70; *Plimpton* v. *Converse,*

42 Vt 712, 718. Such use, in the exercise of her right of ownership, would interrupt the continuity of any adverse possession by the plaintiff. *D'Orazio* v. *Pashby, supra; Camp* v. *Camp,* 88 Vt 119, 92 A 12; *Earl* v. *Griffith,* 52 Vt 415, 420. This presumption, however, could be rebutted by the failure of the defendant to make any claim when in 1924 the plaintiff exhibited to her his plan of lots, her acceptance of the deed from the plaintiff, and her talk with the plaintiff in 1941, when she stated that she wanted to buy some land back of her home place, which included the land now in dispute. See *Perrin* v. *Garfield,* 37 Vt 304, 309, 310. It could fairly be inferred therefrom and from the character and situation of the land, that her use of it was casual and consistent with the plaintiff's claim of ownership. If it was there was no interruption of the plaintiff's adverse possession.

■ From the same circumstances and also the finding that the defendant had given much care and attention to her premises up to a distance of 218 feet northerly from Maple Street, but no farther, it could also be fairly inferred that the boundary line between her land and that of the plaintiff had been established by acquiescence, under the rule that to establish a boundary line by acquiescence there must be a mutual recognition of a given line by the adjoining owners, and such actual continuous possession by one or both to the line thus recognized for the period of 15 years, as shall give a perfected title by adverse possession. *D'Orazio* v. *Pashby, supra; Vermont Marble Co.* v. *Eastman,* 91 Vt 425, 451, 101 A 151; *Spaulding* v. *Warren,* 25 Vt 316, 323; *Crowell* v. *Bebee,* 10 Vt 33, 35, 33 Am Dec. 172.

The findings and such facts as the chancellor might fairly have inferred therefrom support the decree, and defendant's exception that the decree was not supported by the findings of fact is not sustained.

The printed case only shows that the defendant excepted to the findings of fact by excepting to the failure of the chancellor to find as requested in three requests to find. Such exceptions are the only exceptions to the findings that are briefed. These exceptions cannot be treated as substitutes for exceptions to the findings as made. These three requests involved questions of fact or conclusions therefrom, and were inconsistent with the findings as made and the facts that might fairly have been inferred therefrom, to which no exception has been called to our attention. These excep-

tions avail the defendant nothing.  *Levin* v. *Rouille,* 110 Vt 126, 128, 129, 2 A2d 196.

The defendant has briefed an exception to the decree on the ground that it is not warranted by the pleadings and evidence. As it does not appear that any exception was taken to the findings as made, the only question before us is whether the decree is warranted by the pleadings and supported by the findings. An exception to the decree does not reach back of the findings to the evidence.  *Kennedy* v. *Robinson,* 104 Vt 374, 379, 160 A 170; *Peoples Trust Co. of St. Albans* v. *Finn.,* 106 Vt 345, 354, 175 A 4. Taken as a whole the bill of complaint makes out a case of title by adverse possession; but the defendant insists that the allegations in one paragraph thereof, that the defendant "has at various and divers times entered upon the parcel of land hereinbefore described and committed other acts of dominion over the same, which constitute acts of trespass against the plaintiff and against his rights of ownership in said parcel of land, all as herein appears, and that the plaintiff has given notice to the defendant to desist from any other and further trespasses, use of or dominion over said parcel of land hereinbefore described, all of which the defendant has refused to do, but affirmatively claims that she has title to said parcel of land and right to use and occupy the same, all against the true and lawful ownership of the plaintiff", are "an absolute admission under oath that his possession has not been continuous, exclusive, peaceable and acquiesced in; but he avers under oath that after notice from him to desist, the defendant has refused so to do, but affirmatively claims that she has title to said land and right to use and occupy the same."  Without deciding as to whether these allegations, when construed as the defendant would like to have them interpreted, are such as can be taken advantage of under this exception, it is sufficient to point out that in the second preceding paragraph of the bill it is alleged that the defendant, in the spring of 1942, entered upon this parcel of land and plowed up a portion,  This was after the plaintiff had acquired title by adverse possession from Feb. 29, 1924.  In the following paragraph it is alleged that the defendant never made any claim to the disputed land until the spring of 1942, but had up to that time acknowledged the plaintiff's occupation as of his lawful ownership and title. Construing the bill as a whole the trespasses referred to in the paragraph to which the exception was taken were acts committed in

1942, such as the tearing down of the "No Trespassing" sign, and not until the spring of that year did the defendant ever claim that she had title to the land and the right to use and occupy it. This exception is not sustained.

*Decree affirmed.*