## N.A.S. Holdings, Inc. v. Connie Pafundi

[736 A.2d 780]

No. 98-044

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed July 2, 1999

Motion for Reargument Denied August 2, 1999

438

*Craig Weatherly* of *Gravel and Shea*, Burlington, and *Rosemary A. Macero* of *Callahan and Macero*, Boston, Massachusetts, for Plaintiff-Appellee.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, and *John E. McCamley* of *Medor & McCamley P.C.*, Rutland, for Defendant-Appellant.

**Johnson, J.** This is a case in which the unusual and complicated facts involved can easily draw attention away from the relatively simple legal issues that are the key to resolving the underlying conflict. The dispute arises out of competing claims to ownership of a slate quarry located in West Pawlet, Vermont. Appellant Connie Pafundi challenges a ruling of the superior court holding that she had established, through adverse possession, title to the floor of this quarry but not to its walls. Appellee N.A.S. Holdings, Inc. (N.A.S.), which holds record title to almost the entire property, challenges the trial court's conclusion that appellant had established adverse possession of the quarry floor, and vigorously opposes appellant's argument that she has established adverse possession of the entire quarry. We affirm in part and reverse in part.

 Adverse possession is a mixed question of law and fact. See *Montgomery v. Branon*, 125 Vt. 362, 365, 216 A.2d 41, 43 (1965). When reviewing the factual findings of a trial court, we view them in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence, and we will not set aside the findings unless they are clearly erroneous. See *Brown v. Whitcomb*, 150 Vt. 106, 109, 550 A.2d 1, 3 (1988); V.R.C.P. 52(a). The findings will stand if there is any reasonable and credible evidence to support them. See *Harlow v. Miller*, 147 Vt. 480, 481-82, 520 A.2d 995, 997 (1986). Review

of conclusions of law, however, is nondeferential and plenary. See *State v. Pollander*, 167 Vt. 301, 304, 706 A.2d 1359, 1360 (1997) (questions of law reviewed de novo); *State v. Madison*, 163 Vt. 360, 371, 658 A.2d 536, 543 (1995) ("review de novo" commonly used to describe nondeferential on-the-record standard of review that appellate courts apply to lower court determinations regarding questions of law or mixed questions of law and fact).

## I.

The quarry over which the parties are asserting ownership has a vertical wall on the east, approximately one hundred feet in height, and a slant wall on the west. The east wall holds black slate while the west wall holds green. The quarry is roughly bounded on three sides by two lines of dumped slate on the surface beyond the terminus of the east and west walls and by a rock divider to the south. To the north lies the so-called "Jones Quarry," purchased by appellant's father-in-law, Ted Pafundi, from their neighbor, Marguerite Scott, in 1971.[1]

In 1972, Ted Pafundi acquired additional property from Marguerite Scott, what was then referred to as the "Scott Quarry" and later as the "Pafundi Quarry," which is the parcel contested in this case. The deed vaguely described the eastern boundary of the acquired property as "the westerly boundary of the lands of Rising & Nelson" (the neighboring property owners at the time). The trial court found that "[w]hen Rising & Nelson owned what is now the N.A.S. property, no one in that firm knew the location of their west boundary." Ted Pafundi began quarrying operations in this quarry in 1972, primarily extracting green slate from the slant wall on the west side of the quarry.

N.A.S. acquired the property from Rising & Nelson in 1992. Though no one at Rising & Nelson knew the location of their western boundary and no one from the firm had ever enforced a boundary at the quarry, the survey conducted by N.A.S. upon their acquisition of the land revealed that virtually the entire quarry was within Rising & Nelson lands and that Ted Pafundi had in actuality purchased only a small strip of land to the west side of the quarry.

The current conflict arose when N.A.S. attempted to begin operations in the quarry in 1992, and appellant blocked access to the

---

[1] The two quarries were formerly separated by a rock divider, but this was removed by the Pafundis in the late 1970s, creating one continuous pit.

quarry. N.A.S. filed suit seeking to establish its superior title to the quarry. Appellant conceded the issue of record title, but maintained she had achieved title to the quarry through adverse possession. The trial court concluded that the Pafundis' use of the east and west walls of the quarry was of insufficient duration to establish adverse possession of the walls, though they did establish adverse possession of the quarry floor as it was the base of operations for the quarrying activity that took place.

■ To achieve title through adverse possession, a claimant must demonstrate that possession of the land was open, notorious, hostile and continuous throughout the statutory period of fifteen years. See *Higgins v. Ringwig*, 128 Vt. 534, 538, 267 A.2d 654, 656 (1970); 12 V.S.A. § 501. While the trial court concluded that the Pafundis' possession of the quarry was clearly open, notorious, and hostile, the evidence was less conclusive concerning the location and continuity of the possessory acts. The court determined that while Ted Pafundi worked the west wall of the quarry more or less continuously from 1972 until his death in 1979, and his son, Gary Pafundi, had worked the east wall of the quarry more or less continuously from 1979 until his death in 1989, neither of the walls of the quarry had been used continuously for the fifteen-year statutory time period. Nonetheless, because the floor of the quarry was the base of operations for both Ted and Gary Pafundi between 1972 and 1989, they had successfully established adverse possession of the quarry floor. Disconcerted by this awkward result, the trial court invited further briefing by the parties.

Appellant argued in a post-trial motion that her claim based on actual use and possession of the quarry should succeed because the evidence showed that moving from wall to wall was consistent with the manner in which the quarry would be used by an average owner and with the nature of the property. See *Darling v. Ennis*, 138 Vt. 311, 313-14, 415 A.2d 228, 230 (1980) ("Continuity of use is merely such use as an average owner would make of the property, taking into account its nature and condition."). Appellant further argued that the quarry was clearly bounded and must be thought of as a single physical and economic unit, and that it was therefore illogical to grant title only to the quarry floor.

In its final judgment order, the trial court concluded that, because the pits themselves are not clearly bounded, and because the quarry could theoretically be operated by multiple persons at once, one can

not necessarily conclude "that to establish ownership in the base of the quarry is to own the sides." This appeal followed.

## II.

A claim of adverse possession that proceeds under bare claim of right extends only to that property which the claimant has actually occupied. See *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 156, 559 A.2d 1068, 1070 (1989). A claimant may also, however, seek to prove ownership through constructive possession, the doctrine under which a claimant achieves possession of an entire plot of land through actual occupation of a part. See *id.* The trial court erred in failing to apply the doctrine of constructive possession to this case, instead proceeding directly to analyzing the Pafundis' use of the various parts of the contested property without first explicitly categorizing it as an actual possession or constructive possession claim.[2] This was error because such categorization is a threshold inquiry necessary to the assessment of the claimant's possessory acts.

Vermont has long recognized two methods of achieving constructive possession: (1) when the claimant is operating under color of title[3] and (2) when the land is marked by clear and definite boundaries. See *id.* (where there is neither color of title nor definite boundary marks on the land, adverse possession extends only as far as claimant has actually occupied and possessed land); *Thurston v. Batchellor*, 100 Vt.

---

[2] Appellant exacerbated the problem by referring to her claim as one of actual possession, when her argument was based on the theory of constructive possession, a fact recognized by appellee in its brief, where it refutes the constructive possession argument. (Appellant subsequently argues in her reply brief that she could succeed under either an actual or constructive possession theory.) The theory was forwarded, if unforcefully, by appellant and was clearly in the case. Appellant cited *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 559 A.2d 1068 (1989), in her post-trial motion for the proposition that actual possession of a part can establish constructive possession of the whole only where the claimant proceeds under color of title or where the lot is marked by clearly defined boundaries. Appellant pointed out that the quarry had "very definite boundaries marking the limit of possession on the eastern side," namely, "a line of slate dumps [lying] atop the butt along the eastern side of the quarry creating a vertical wall running the entire north/south length of the western side of [Rising & Nelson's] land." Referring to the clear boundaries around the quarry to argue that there was "actual possession" of the entire quarry is — despite appellant's insistence on referring to it as a claim based on "actual possession" — the essence of a constructive possession claim.

[3] Claim of title, or "color of title," is present where "[a]ny fact, extraneous to the act or mere will of the claimant . . . has the appearance, on its face, of supporting [the claimant's] claim of a present title to land, but which, for some defect, in reality falls short of establishing it." Black's Law Dictionary 241 (5th ed. 1979).

334, 341, 137 A. 199, 202 (1927) (marking claim to land with fence has same effect as proceeding under color of title; that is, it "extends acts of possession on any part of the land to the boundary so marked"); *Lang v. Clark*, 85 Vt. 222, 233, 81 A. 625, 630 (1911) ("[A]ctual possession of a part of a lot may give constructive possession of the whole lot if it has boundaries sufficiently well indicated by whomsoever those boundaries may have been erected or indicated upon the land."); *Rice v. Chase*, 74 Vt. 362, 366, 52 A. 967, 968 (1902) (for actual occupation of part to establish constructive possession of whole, claimant must act under claim to whole either because the boundaries are clearly marked or because the claimant operates under color of title).

The trial court did not respond to the case law (cited by appellant in her post-judgment motion) holding that possession of a part established possession of the whole when a claimant proceeded under color of title or when there were clear boundaries on the claimed property. Instead, the trial court focused on the morass of factual issues concerning which portions of the quarry the Pafundis consistently worked and whether the quarry must be thought of — on an abstract level — as a single physical and economic unit. This analysis is ultimately the same analysis necessary under a constructive possession framework; however, the trial court did not make use of the related case law to give the analysis its proper legal effect. As a result, the trial court did not apply the doctrine to the facts presented to draw a conclusion concerning whether the subject property possessed sufficiently clear boundaries.

Nonetheless, the trial court did make findings to the effect that the quarry was a distinct and recognizable parcel:

> The configuration of the quarry is quite clear once one visits the site. The east butt is a nearly vertical wall over 100 feet high. There are slate dumps from many years ago along the ridge to the east. The west slant is a sharp, perhaps 45 degree or more in places, slope to the west. It too is topped with slate dumps from years past.

Furthermore, in the judgment order, the trial court acknowledged that Connie Pafundi had record title from the slate dumps on the west side to the survey line, located somewhere down the slant face on the west side of the quarry. This shows both that the western-most boundary is not in dispute, as appellant has record title to it, and that the slate dumps are an acknowledged and clear surface demarcation of the quarry boundaries.

## III.

In light of this discussion, the issues on appeal can now be addressed succinctly. First, the trial court's holding concerning the quarry floor is affirmed. The appellant prevailed on this issue below; therefore the evidence is viewed in the light most favorable to her. See *Brown*, 150 Vt. at 109, 550 A.2d at 3. The findings of the trial court were supported by credible evidence, and there was no misapplication of law.

In arguing that the trial court erred by concluding that appellant had achieved adverse possession of the quarry floor, appellee argues that (1) the Pafundis did not use the quarry floor continuously and (2) appellant did not present evidence of how an average quarry operator would have used the contested land. On the second point, appellee cites no law requiring claimants to present evidence specifically directed to the issue of average use. Rather, "average use" is a standard that has developed in the case law and that is to be used by the trial court in assessing a claimant's possessory acts. The testimony at trial of individuals involved in the quarry business provided a sufficient evidentiary basis for the court to draw conclusions as to average use.

■ Additionally, appellee fails to show that the trial court lacked credible evidence to support its finding that the use of the quarry floor was continuous. The kind and frequency of acts of occupancy depend on the condition of the property, the uses to which it is adapted, and the intentions of the claimant. See *Barrell v. Renehan*, 114 Vt. 23, 29, 39 A.2d 330, 333 (1944); *Stephenson v. Wilson*, 6 N.W. 240, 241 (Wis. 1880) (mining operations need only be "constant and continuous as the nature of the business and customs of the country would permit or allow"). It is well established that there may be lapses of time between acts of possession. See *Montgomery*, 125 Vt. at 365, 216 A.2d at 43. Whether the amount of time between acts of occupancy interrupts the running of the period depends on circumstances and intention of occupier. See *Barrell*, 114 Vt. at 29, 39 A.2d at 333.

■ In this case, it is hard to imagine how the Pafundis would have acted any differently toward the land had they held record title to it. See, e.g., *A. Charles Bussen Trust v. Kertz*, 723 S.W.2d 922, 929 (Mo. Ct. App. 1987) (fact that claimant engaged in quarrying activities in the disputed area and engaged in continuous preparation of the land for excavation "showed [the claimant] occupied the disputed area as his own"). The evidence shows that Ted Pafundi began working in the

quarry shortly after purchasing it.[4] Though his son Gary also pursued other lines of work, he assisted his father in the quarry over the years, and transitioned to operating the quarry after his father's death. The periods of time when operations slowed or stopped are consistent with the exigencies of a family-run business. It is clear the Pafundis intended to continue working there. A claimant's use of the land need not be optimal. See *Jarvis v. Gillespie*, 155 Vt. 633, 639, 587 A.2d 981, 985 (1991) ("Simply because a parcel may be susceptible to uses other than those to which the claimant chose to put it does not necessarily lead to the conclusion that the claimant failed to act toward the parcel as an average owner would have."). The Pafundis planted their flag on the land and left it unfurled, not always working the land to its maximum capacity, but certainly never retreating in their claim to it. See *Barrell*, 114 Vt. at 29, 39 A.2d at 333 (claimant must "unfurl his flag on the land, and keep it flying" to give the owner notice of occupancy). There was continuous notice of occupancy. The fact that this went unnoticed by Rising & Nelson was due to the fact that it was entirely absent from the land and unaware of its boundaries. There is sufficient credible evidence to uphold the trial court's ruling as to the quarry floor.

Second, the trial court's holding concerning the remainder of the quarry is reversed. The appellee prevailed on this issue below; therefore the evidence is viewed in the light most favorable to N.A.S. Nonetheless, the trial court misapplied Vermont law to the facts of this case. The trial court should have assessed the evidence in light of the fact that this was a clearly bounded piece of property, instead of first assessing actual use, and only then considering on an abstract level whether the parcel was "a single physical and economic unit."

The trial court essentially subsumed the question of the physical nature of the property into the question of average use (i.e., would the average owner use different walls at different times; could more than one operator theoretically work the quarry), rather than treating it as an issue of notice, which is the true concern of the constructive possession doctrine. The question is whether the holder of record title would understand the extent of the property claimed by the claimant's "unfurled flag."

---

[4] Appellee argues that quarrying is an act of trespass, not possession. This argument has no merit. See *A. Charles Bussen Trust*, 723 S.W.2d at 928-29 (quarrying activities in the disputed area are acts of occupancy sufficient to establish adverse possession); *Carrington v. McNeil*, 396 N.Y.S.2d 286, 287-88 (App. Div. 1977) (use of property as quarry and for storage of quarrying equipment, along with at least partial fencing and payment of taxes, are acts of occupancy sufficient to establish adverse possession).

Here, the findings of the trial court indicate that the boundaries on the surface of the land were definite, and these findings should have been given their proper legal effect. The court observed that "the configuration of the quarry is quite clear" and recognized the slate dumps as obvious features on both the eastern and western sides of the quarry. The slate dumps on the western side of the quarry establish one of the boundaries of the parcel which Ted Pafundi did, in fact, purchase. The trial court made no finding that Rising & Nelson ever transgressed the slate-dump boundaries.

While the trial court did examine the issue of whether the quarry was a "single physical and economic unit," it conducted this inquiry without reference to the relevant case law. Furthermore, it answered this question by considering whether more than one operator could theoretically work the quarry. The relevant legal issue, however, is the objective physical characteristics of the property, that is: Would it appear as a bounded parcel so that a person observing occupation of some part of it would be on notice as to the extent of the claim?

■ If there are clear boundaries on the claimed property, actual possession of a part results in constructive possession of the whole. See *Community Feed Store*, 151 Vt. at 156, 559 A.2d at 1070; *Lang v. Clark*, 85 Vt. at 233, 81 A. at 630. Here, the trial court made findings of fact indicating that the property was clearly bounded. Therefore, the conclusion that appellant had established adverse possession of the quarry floor necessarily leads to the conclusion that she established adverse possession of the entire quarry.

■ Some question remains as to the exact location of these boundaries for purposes of describing with precision what land has been possessed by appellant. This is an issue properly dealt with by the trial court, and therefore we remand it. Appellee N.A.S. argues that the lack of such specificity defeats appellant's claim altogether.[5]

---

[5] Appellee also argues that constructive possession can be achieved only pursuant to a deed that clearly describes the property in terms of metes and bounds measurements, a position that is in direct conflict with our case law, which also recognizes constructive possession claims where a lot has clearly marked boundaries. See *Community Feed Store*, 151 Vt. at 156, 559 A.2d at 1070.

Appellee additionally argues that the quarrying activity established possession only of the stone already quarried, and that appellant can therefore lay no claim to anything beyond the surface of the quarry as it now exists. This proposition is only true, however, in cases where mineral and surface rights have been severed from one another. See *White v. Miller*, 139 N.Y.S. 660, 663 (Sup. Ct. 1912) (where surface and mineral rights have been severed, the mere opening and working of quarry does not

Mere lack of specificity in boundaries, however, does not defeat a constructive possession claim. In another constructive possession case, this one under color of title, we held that where a record title owner was confronted with uncontroverted evidence of occupation,

> the burden was on the [owners] to show any competing evidence of possession or intrusion affecting the land claimed by [claimants]. . . . [Owners] rested their case simply on their record title and the fact that the boundary lines of [claimants'] parcel were not readily deducible from the deed. This is insufficient to establish ouster as a matter of law. . . .
>
> . . . .
>
> . . . [T]he issue of adverse possession has been settled . . . [and t]he only matter for determination is the fixation of the boundary lines of the lot to which the [claimants] are entitled.

*Montgomery v. Branon*, 127 Vt. 83, 89-90, 238 A.2d 650, 654-55 (1968). In this case, the statutory period passed entirely under Rising & Nelson's watch. Rising & Nelson never transgressed the slate dump boundary or sought to enforce any other boundary in the area. No one contested the Pafundis' use of the quarry until 1992, when the neighboring property changed hands.

"[C]ontinued satisfaction and compliance with a boundary marked on the ground is persuasive evidence which supports its selection as the correct division." *Amey v. Hall*, 123 Vt. 62, 67, 181 A.2d 69, 72 (1962). A line established by acquiescence for the statutory period of fifteen years prevails over the line established by a later survey. See *id.* at 68, 181 A.2d at 73. Here, Rising & Nelson recognized the boundaries by default. Rising & Nelson's complete absence from the contested area implies acquiescence to whatever boundary line the Pafundis observed. This is the principle underlying the doctrine of adverse possession: That a landowner so inattentive as to permit occupation of its land for fifteen years must accept the subsequent loss of title. The limited factual issue to be determined by the trial court on remand is the precise location of the boundary lines based on the obvious physical characteristics of the property.

---

establish adverse possession to anything beyond the face of the quarry, but "where there has been no severance between the title to the surface and that to the minerals beneath, one entering upon the surface and conducting mining operations thereon is in adverse possession both of such surface and of the minerals"). There is no severance here.

■ ■ Finally, appellee asserts two evidentiary errors; both rulings are affirmed. The trial court has broad discretion in issuing an evidentiary ruling, and we review such rulings only for abuse of discretion. See *Haynes v. Golub Corp.*, 166 Vt. 228, 236, 692 A.2d 377, 382 (1997). Appellee contends that the trial court erred in refusing to admit evidence of appellee's damages from the allegedly wrongful injunction. V.R.C.P. 65. Appellee alleges that the injunction was wrongfully granted because appellant had no record title to the quarry and had never conducted a survey to determine the true boundaries of the land. This argument misapprehends the very nature of an adverse possession claim, which may be based on a claim of title, but which ultimately seeks to triumph over record title through bare possession. Upon request for an injunction, the court was faced with some form of occupation of the quarry by the Pafundis for the period between 1972 and 1989, and Rising & Nelson's complete absence from the land during that period. Given these facts, it was not error for the trial court to deny appellee's request to admit evidence of damages allegedly flowing from a wrongful injunction. Appellee also contends that the trial court erred by admitting evidence that appellant failed to produce prior to trial. V.R.C.P. 26. Appellee has not demonstrated nor made any argument that it was prejudiced by the ruling. See *Gilman v. Towmotor Corp.*, 160 Vt. 116, 122, 621 A.2d 1260, 1263 (1992) (trial court's decision to admit or exclude evidence will not be reversed absent abuse of discretion resulting in prejudice). Appellee has failed to show that the trial court abused or withheld its discretion.

Appellant established, on the basis of facts found by the trial court, constructive possession of the entire quarry for the statutory time period of fifteen years.

*Affirmed as to the question of adverse possession of the quarry floor, and reversed and remanded for further proceedings not inconsistent with this opinion and for establishment of the exact boundaries of the property.*