*Gacioch v. Zezza*, No. 454-8-11 Wrcv (Teachout, J., August 5, 2014)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                                     **CIVIL DIVISION**
Windsor Unit                                                          Docket # 454-8-11 Wrcv


**MICHAEL GACIOCH**

     **v.**

**P. RUTH ZEZZA, Trustee for**
**P. RUTH ZEZZA FAMILY REVOCABLE TRUST**


### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Plaintiff seeks a declaration of ownership of a portion of the property he believed he purchased but for which Defendant holds record title. The case came before the Court for a final hearing on May 6 and 7 and June 18, 2014. A site visit was taken on the first day prior to taking evidence. Plaintiff was present and represented by Attorneys Timothy M. Andrews and Peter Lawrence. The Defendant's principal Ruth Zezza was present and represented by Attorney Marc Nemeth.

Based on a prior ruling in the case and a subsequent agreement between the parties, it has already been determined that Plaintiff has acquired ownership by adverse possession of the land on which his garage and driveway is located, as well as a limited amount of contiguous front yard between the house, garage, and the road. The remaining property at issue is an additional strip of land fronting the road to the left of the garage, and additional alleged backyard area behind the garage and house. For the reasons set forth in these findings of fact and conclusions of law, the Court declares that Plaintiff has acquired ownership of a portion of the land he claims, but not all of it.

#### Findings of Fact

Plaintiff owns a parcel of land with a residence on Popple Dungeon Road in a remote area of Chester. Except for the road frontage, it is surrounded on all sides by land owned by the Defendant.

Plaintiff's residence was originally a hunting camp. For several years starting in the 1920's, the uncles of Peter Gallerani used the camp during hunting season and other weekends, and later some of the relatives acquired it. They used an outhouse that was located behind, and not on, the hunting camp property, but with no objection by anyone. Mr. Gallerani himself used the camp regularly with his uncles and then later with other family members.

Eventually he bought it in 1962. The parcel was described in the deed as having dimensions of 80' by 100'. He and his wife used it as a weekend getaway from their home in Massachusetts, and gradually began to make improvements. They became friendly with the neighbors, Carlo and Betty Zezza, who owned the land surrounding their parcel and a great deal of additional land in the area ("half the mountain"). There was occasional regular social interaction between the Gallerani and Zezza households, including visiting and having dinner and tea ("cookies and bourbon") at each others' houses. Mr. Gallerani taught the Zezzas how to hunt for mushrooms and cook venison. Ruth Zezza, the daughter of Carlo and Betty, rode her horses regularly across Gallerani land.

In the late 80's, the Galleranis retired and moved to the property as their retirement home. In 1989, they sought to expand the residence, and applied for a permit for an addition and a garage. They obtained amateur help from someone in town in completing the permit application, which was filed with the Town and included a sketch of the site and proposed addition. In the application they stated that the setback distance from the northern end of the garage to the northern boundary line would be 39 feet, and the setback distance from the back of the addition to the dwelling (eastern edge of the dwelling) to the back (eastern property line) would be 40 feet. They obtained the permit, and proceeded to construct the garage and addition. After doing so, they used the strip of land to the left of the garage, between the garage and a gully, as part of their yard, and also used some land in the back of their house and garage as part of their yard. For example, they maintained a burn barrel, mowed, and planted flowers.

In fact, the Galleranis built their garage and the driveway leading to it on land they did not own. They built them beyond their own northern boundary, encroaching on land owned by the Zezzas. The evidence suggests that the Galleranis probably did not intend to encroach on Zezza land, but they clearly did so. The location of the addition and garage was highly visible to anyone going by on the road, including the Zezzas, who lived just down the road and owned the surrounding property. Had the Zezzas been attentive to their boundary lines, a check of Town records would have shown what portions of their land the Galleranis claimed for their expanded use to meet setback requirements. At no time did the Galleranis ever seek permission from the Zezzas to construct anything on Zezza land or to use any of it for setback or lawn or any other purposes. At no time did the Zezzas ever give permission to the Galleranis for such uses. Ruth Zezza, daughter of Carlo and Betty, lived on the same road as her parents, in two different houses, off and on from 1957 to the present. Her son, Jean Carlo McClure, was born in 1984 and grew up on the road.

When the Galleranis created the addition, they stopped using the outhouse, and installed a "destroylet" in the bathroom inside the camp. They did not remove the outhouse, and it still stands today, but has been unused for twenty years. It is surrounded by scrub trees, as it always was.

In 1994, four years after constructing the addition and garage, the Galleranis wished to improve their septic system. They sought and obtained agreement from the

2

Zezzas for an easement to construct a mounds septic system on land owned by the Zezzas behind the Gallerani property. By this time, Carlo Zezza had died, and Betty Zezza and Ruth Zezza signed the legal instrument creating the easement, which is not at issue. A piece of heavy equipment drove through the Galleranis property to the mounds site to construct it. In doing so, it removed a wide swath of trees previously located behind the Gallerani house. After the mounds system was installed, the Galleranis made some use of the area on the Zezza property cleared as a result of its construction: they planted some flowers and two apple trees, and at some point mowing occurred in the cleared area.

The Galleranis lived in the residence full time from the time they added the addition and garage in 1990 until they sold to Michael Robertson in 2000. Over that decade, the Galleranis used the lawn and yard area behind the house as if it were part of their yard, and they used the area to the north of the garage to some extent as theirs, such as for a wood pile, parking cars, planting some flowers, and piling stones. In both the area behind the Gallerani house and the second area to the left of it, there were no distinct lines or changes of use marking edges of used land area; the edge of the yard was not distinct, but blended into surrounding growth of bushes, grasses, and scrub trees.

The Galleranis never asked for permission from the Zezzas to use these areas, and the Zezzas never granted permission to them to do so. The uses were highly visible from the road and the adjacent Zezza property. In addition, the Zezzas continued to ride horses close to the Gallerani house, and also visited the Gallerani house for social interactions and meals. Jean Carlo McClure estimates that the families went to each others' houses roughly monthly.

Robertson purchased the Gallerani property from the Galleranis in 2000. He never questioned where the exact boundaries might be, and assumed from use that they included the side yard to the left of the garage and the back yard that was open. He continued full use in such areas. He used the side yard to the left more fully than the Galleranis had. He put down pallets for stacking firewood, created a stone wall down by the road at the approximate location of the gully, and developed an area in the side strip for parking. When there was a flood up the road and road work done by the Town took out the stone wall, he rebuilt it. This was between 2003 and 2005. Everything he did was visible from the road, and from the adjoining Zezza land. Robertson also had good neighborly relations with the Zezzas. He never asked the Zezzas for permission to use either the side or backyard areas as he believed them to belong to him as owner. The Zezzas never granted permission for such uses.

In 2007, Robertson sold the property to Plaintiff Michael Gacioch. Two months after purchasing, Mr. Gacioch contacted Ruth Zezza for the purpose of clarifying common boundary lines. By then her parents had both died and she was the principal of the owner entity. She told him that she thought his parcel was smaller than he thought it was. He hired a surveyor to survey the boundaries. His deed conveyed to him a parcel of 80' x 100', using the same description as in the deed to the Galleranis.

3

As part of the follow-up investigation to determine the exact location of boundaries, once the issue was raised by Mr. Gacioch, Jean Carlo McClure went to the Town offices and obtained a copy of the Gacioch deed and looked at the tax maps. He and Mr. Gacioch met on the property in 2008 with a tape to measure the distances and locations of the boundaries based on the deed description. They attempted to locate the boundaries by following the deed description and measuring the stated distances on the ground. The results were confusing, as they had expected the buildings to be encompassed by the boundaries but they were not. The northerly boundary according to the deed description ran right through the building that is the Plaintiff's residence and garage. Their discovery led to this lawsuit due to the need to determine current ownership and boundaries.

Plaintiffs claim by adverse possession all land within a parcel as shown on a proposed survey map, Plaintiff's Exhibit 1. The north (left side) proposed boundary is the gully and is near the line of the stone wall built by Robertson. The back (east) proposed boundary encompasses lawn area behind the Gacioch house. It includes the location of a former burn barrel, the one remaining apple tree, planted flowers, and a mowed area extending toward the septic mound. Ruth Zezza, on behalf of Defendants, opposes Gacioch ownership of any land area other than what lies under the garage and driveway and contiguous related areas.

The boundaries as described in the Gacioch deed and other deeds in the chain of title are shown as the dashed line on Plaintiff's Exhibit 1, which is the survey plan that shows the proposed area Plaintiff seeks to have declared as his by adverse possession.

## Conclusions of Law

To prove ownership by adverse possession, a party must prove open, notorious, continuous, and hostile use for a period longer than 15 years. The adverse possession claimant must have "unfurled his flag" on the property in question and claimed exclusive dominion over it in a manner that excludes the title owner from use. *Cmty. Feed Store, Inc. v. Ne. Culvert Corp.,* 151 Vt. 152, 155 (1989). An adverse user "must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." *Barrell v. Renehan,* 114 Vt. 23, 29 (1944). "The use or possession must be so substantial as to put an ordinary owner on notice of the adverse possessor's claim to absolute dominion over the property." *Old Railroad Bed, LLC v. Marcus*, 2014 VT 23, ¶ 24; see also *Jarvis v. Gillespie,* 155 Vt. 633, 641 (1991). Adverse possession rests upon the failure of the true owner to exercise his or her rights of ownership in the face of an obvious, adverse, or hostile possession by another. *Harlow v. Miller*, 147 Vt. 480, 483 (1986)

In this case, Defendants do not deny that Plaintiff's predecessors used the lands at issue in the manner described for a continuous period of sufficient length; they argue, however, that the uses by Plaintiff's predecessors were not exclusive, but compatible with ownership uses of the Zezzas. The Zezzas claim that they never felt excluded from riding their horses or walking in the disputed area. Defendants assert that the Plaintiff's

4

evidence does not show that either the Galleranis or Robertson ever excluded others from the disputed area or otherwise asserted a hostile or adverse claim of ownership that "challeng[ed] the owner's right to use the land at all." *Patch v. Baird*, 140 Vt. 60, 64 (1981).

When the Galleranis put up an addition and garage on their property that encroached on the Zezzas' land, they were "unfurling their flag," and claiming a portion of the Zezza land for their exclusive use. The use of an addition to a residence and a garage is exclusive to the owner of the residence. The Court has already ruled that the land under the garage and driveway is in Plaintiff's ownership by adverse possession, and the Defendants agree that the irregular-shaped land between those areas and the road are encompassed within lands owned by Gacioch by virtue of that adverse possession. The issue is the additional land to the left of the garage, and an area behind the house that Plaintiff claims should extend to a straight line boundary as shown on the surveyed proposal.

When the Galleranis constructed their garage and addition, they not only unfurled their flag on the specific area defined by the outline of the building and driveway, they unfurled it on the full extent of the area they showed on the site plan they submitted to the Town to obtain permission for the development work. The Zezzas could clearly see on the ground that the Galleranis were using Zezza land; to determine the extent of the land area claimed, the Zezzas only had to go to the Town offices to look at the site plan, which was on file. The site plan in the application is a clear visual depiction that defines the area the Galleranis intended to occupy exclusively for residential purposes. Moreover, the evidence indicates that both the Galleranis and Robertson subsequently used the area depicted in the site plan to the exclusion of all others, including the Zezzas. That information in the site plan and application showing the extent of the appropriated land area was easily accessible to the Zezzas in an open and notorious manner: it was a public record to which a record title owner would have easy access upon investigating a blatant physical appropriation of a portion of the record title owner's land.

The site plan shows that the northern boundary is a straight line that is located 39 feet north of the north side of the garage. It also shows that the eastern boundary is 40 feet east of the addition portion of the residence. The land area within these dimensions was utilized by the Galleranis in 1989 to apply for a permit to meet setback requirements, and continued to be used when they proceeded to construct the addition and garage that encroached on Zezza land, and has been used in an open, notorious, continuous, and hostile manner by not only the Galleranis but their successor, Robertson to maintain compliance with the permit. By 2005, Plaintiff's predecessor Robertson's use had ripened into ownership by adverse possession. Thus, by tacking, Plaintiff Gacioch acquired that same interest when he purchased from Robertson in 2007. *Deyrup v. Schmitt*, 132 Vt. 423, 425 (1974) ("'Tacking' is that doctrine which permits an adverse possessor to add his period of possession to that of a prior adverse possessor in order to establish a continuous possession for the statutory period.").

Plaintiff claims additional land beyond such dimensions. Specifically, he claims land behind the house, to the east, that he claims his predecessors used, such land

5

encompassing the burn barrel, flowers, and the outhouse. However, those uses occurred outside of the land defined in the 1989 application and site plan. Use of the outhouse ended in 1994. Robertson never used the burn barrel, so use of that spot did not continue for the required 15 years. The flowers that were planted were within the area cleared for an easement to a mounds system, and are in a "naturalized" planting style not inconsistent with Zezza use of their own land. Plaintiff has not proved adverse possession of any land area other than that defined by the dimensions included in the 1989 application and site plan that was actually implemented by the encroaching construction in 1990. Thus, the area of adverse possession is limited to the area claimed in the application and site plan.

Attached hereto is Exhibit A, which includes a not-to-scale depiction of the boundary of the land area Plaintiff has proved he owns by adverse possession. It is Plaintiff's responsibility to obtain a proper legal description of the area to be included in a final declaratory judgment.

Dated at Woodstock, Vermont, this ___ day of August, 2014.


Honorable Mary Miles Teachout
Superior Court Judge



Honorable Jack Anderson
Assistant Judge